# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 13, 1928.

ELLEN M. SCHAEFFER
VS.
MORTON SCHAEFFER, TRUSTEE.

*Charles McHenry Howard* for Safe Deposit and Trust Company, substituted trustee.

*Arthur W. Machen, Jr.,* for Charlotte Louise Hill, claimant.

*Niles, Barton, Morrow & Yost* for Near East Relief.

*Edward Duffy* for Sarah Snowden Weymouth.

*Richard M. Duvall* for estate of Ellen M. Schaeffer (deceased daughter).

*Janney, Ober, Slingluff & Williams* for John A. Morton.

*George Weems Williams* and *William L. Marbury, Jr.,* for Eliza M. Schaeffer, widow of Morton (son of Edward K., testator).

O'DUNNE, J.—

The contention of the various conflicting interests were ably argued by respective counsel, each of whom later filed elaborate briefs.

The will of Edward K. Schaeffer is but a page long. Only two clauses are involved in the various constructions sought, and the main questions center on two lines of the second paragraph.

The testator left certain bonds to his son, Morton, in trust, to pay the income therefrom to his daughter Ellen as long as she lives, and in the event of her having children at her death, the

amount held in trust for her to be equally divided among them.

In the next paragraph, he left all the rest and residue of his estate, *"not herein otherwise disposed of,"* to his wife Elizabeth, for life, and at her death "the estate to be divided equally among his three children, or their heirs, the portion coming to his daughter, Ellen, to be placed in trust as previously directed, subject to the same conditions," *"and in the event of her dying childless, the amount held in trust for her, to be equally divided between my two sons or their heirs."*

Testator died in 1886; will made in 1881. He left surviving him, his widow Elizabeth, and his daughter Ellen and his two sons, Edward M. and Morton. Edward died in 1901, intestate and unmarried. Morton died in 1921, testate, leaving a widow Eliza, but no descendants. Testator's widow Elizabeth died 1904, intestate, not remarried. Ellen, the daughter, died July, 1927, unmarried, but leaving a will.

It is seldom that two lines of a will can present so many possibilities of construction.

In the argument of Mr. Charles McHenry Howard, the following questions are suggested:

1. As of what period are "heirs" to be ascertained?

If as of the dates of the deaths of Edward M. and Morton Schaeffer, then Ellen M. Schaeffer was an heir of Morton Schaeffer and one of the heirs of Edward M. Schaeffer.

If will means heirs in esse at the death of Ellen M. Schaeffer, then her estate takes no share.

2. Whether "heirs" here means heirs under law of descent (real estate) as to both real and personal property, or as to latter means distributees (those who would take personalty by intestacy).

3. In latter case, whether realty and personalty are to be distinguished on basis of present investments, or according to nature of investments of estate at some previous period, such as death of testator, death of each son, etc. (Realty originally owned was sold; on other hand ground rents have been bought.)

4. Whether heirs now (at death of life beneficiary) in esse are determined by present law of descent (Act of 1916) or by law of descent in force at death of testator, or at death of sons. (Act of 1916 abolished preference of equally near relatives on father's side to relations on mother's side; also made widow an "heir" of real estate.)

5. Whether acceptance by widow of Morton Schaeffer of provisions in her favor in his will, bars her of any widow's share as a distributee and heir, not only in his estate, but also in this gift from another source to his "heirs."

6. Does "heirs" here mean heirs of the body or issue? If so it would follow either that testator failed to provide for the contingency of neither his sons nor any issue of their surviving his daughter, and that he therefore died intestate as to such event; or else that the primary gift to the daughter was not for life only, but a general gift, only to be cut down if either her brothers or issue of them survived her, so that as neither her brothers nor any issue of them survived her, she kept a fee or absolute estate, so that the property passed under her will.

7. Whether limitation, in the event of Ellen M. Schaeffer dying childless, of the *"amount"* held in trust for her to the sons or their heirs includes the $11,000 bonds specifically bequeathed in trust, as well as share of residue.

It is contended by several of the claimants that the testator died intestate as to the corpus of the $11,000 of bonds left to Morton in trust for daughter Ellen, as distinguished from the corpus of the estate left in trust with a life interest to his widow. I cannot adopt this construction. Under the theory of intestacy as to that, it would be corpus *"not otherwise disposed of."* In the next paragraph, testator left all the rest and residue of his estate "not otherwise disposed of" to his wife Elizabeth for life, etc. Therefore, it seems to me that this corpus passes under the residuary clause, and there is, and cannot be, *intestacy* as to it, in view of this language, as well as the legal presumption against intestacy. I am of the opinion that upon the death of Ellen, who died childless, July, 1927, that the entire corpus passes to the "heirs" of testator's two sons, as stated in the will, and that these heirs are ascertainable as of the time of her (Ellen's) death in July, 1927, and that who are "heirs" is determined by the

law in effect *at the time of her death,* and *not* heirs as determined by law at the time of *testator's* death, nor at the time of the making of the will by him in 1881, but heirs as legally established in July, 1927, on the death of Ellen, childless. (As to this, there seems to be no decision in Maryland.)

I am further of the opinion that the estate of Ellen cannot participate in the distribution, as is contended for. The class of "heirs" is to be ascertained as of the time of death. She cannot be a member of that class.

And, lastly, that Eliza, the widow of Morton, son of Edward K., the testator, is, under Art. 46, Sec. 2, made "heir" of her husband, and insofar as she took under his will, she cannot participate in *his* estate, but this does not bar her from qualifying as beneficiary under the will of Edward K. when he designates a *class* as the object of his bounty, if she comes within that class. If under the happening of certain contingencies, it comes to pass, as it has, that he wills certain property to the "heirs" of Morton, his son, and if she is one of that class, or the only one of that class, she is not debarred thereby. She does not take *through* her husband's estate, but she takes as *member* of that class designated by testator. She takes direct from the testator, and not through her husband's estate, just in the same manner as she would take had the testator designated as the objects of his bounty "the classmates of my son at the year of his graduation." Had she been a member of that graduation class, the fact that she was then or thereafter became his wife, would in no wise affect her eligibility to take direct from the testator under the terms of his will. The same, I think, is true here. She takes under testator's will, directly from him, because she is of the class designated: viz, "heir" of Morton, his son.

Some of the briefs filed by counsel disclose great industry and careful research, containing citations of upwards of 100 authorities. In will cases, except as to canons of constructions, little aid can be gotten from precedents. The language of each will being peculiar to itself, the object being the ascertainment of the intention of the testator as gathered from the four corners of the document itself, as to which precedent is of little assistance. With the wealth of Maryland decisions on will constructions I find no precedent as a guide as to when and under the law of what date the class designated, viz, "heirs of Morton," is to be ascertained. While it may be argued, the testator if alive now might not intend his property to pass to a stranger to the blood, the widow and heir of his deceased son, nevertheless he designated it should go to the "heirs" of said son, without knowing that between the time of writing his will in 1881 and the time it becomes effective on death of daughter childless (July, 1927) the laws of the State under which it is to become operative have enlarged the class of "heirs" to include *widow* as well as children. In the absence of Maryland precedent, "right reason" as it seems to be points irresistibly to that conclusion, that the time of operation is on the death of the daughter Ellen, that the laws governing are those in effect at *that* time, and not those of a more ancient vintage.

I will, therefore, sign a decree in accordance with these views.